862 P.2d 894

**Ralston Orlando PITTS, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF COCONINO, the Honorable Charles D. Adams, a judge thereof, Respondent Judge,**

**STATE of Arizona, Real Party in Interest.**

**No. 1 CA–SA 93–0100.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 3, 1993.

Review Granted, Cross–Petition for Review Denied Nov. 30, 1993.

ent value of a structured settlement or to a percentage of the periodic payments when

Richard M. Romley, Maricopa County Atty. by Diane E.W. Gunnels and Cindy Nanetti, Deputy County Attys., Phoenix, for respondent.

Aspey, Watkins & Diesel by Bruce S. Griffen, Flagstaff, for petitioner.

paid).

## OPINION

CLABORNE, Judge.

This case began when a fifteen-year-old Flagstaff girl told police that when she was in the fifth grade, she had been fondled by Petitioner, a teacher with whom she became acquainted through choir and music camp. As the investigation progressed, the allegations expanded into a description of numerous sexual contacts occurring over a period of six years beginning in September 1985.

During the course of the investigation, the police learned that Petitioner had left the Mesa Public School System in 1977 because of allegations of an inappropriate relationship with a student. The case relating to the Flagstaff girl was presented to the grand jury, which, in addition to evidence regarding the focus of the investigation, heard extensive testimony about the relationship between Petitioner and the Mesa student, including evidence of kissing, fondling, and oral and vaginal intercourse.

The grand jury returned a multi-count indictment for child molestation, sexual abuse, and sexual conduct with a minor, all related to Petitioner's alleged conduct with the Flagstaff girl. Petitioner moved to dismiss or to remand for a new determination of probable cause on the grounds that the introduction of evidence of prior bad acts violated his right to due process of law. The trial court denied the motion and Petitioner brought this special action, seeking to reverse that ruling.

█ We remand with directions to grant the motion for a new finding of probable cause. We hold that the introduction of evidence of prior sexual misconduct, without expert testimony establishing that the prior conduct demonstrates an emotional propensity to commit the alleged acts which are the subject of the grand jury's

investigation, deprived Petitioner of due process of law.

In *State v. Emery*, 131 Ariz. 493, 506, 642 P.2d 838, 851 (1982), our supreme court said:

> If a state resorts to the grand jury procedure, the due process and equal protection clause of the fourteenth amendment require utilization of an unbiased grand jury and the presentation of evidence in a fair and impartial manner.

See also, *Crimmins v. Superior Court*, 137 Ariz. 39, 41, 668 P.2d 882, 884 (1983).

█ There are no Arizona cases directly on point.[1] However, in *State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977), the supreme court held that evidence of remote prior sexual misconduct was not admissible at trial to prove that the defendant was guilty of other acts of sexual misconduct unless there was expert testimony to prove that the prior misconduct demonstrated a propensity to commit the acts for which the defendant was on trial. The supreme court said:

> [t]he admissibility of the prior act depends initially upon its relevancy, which involves complicated questions of sexual deviancy in a sophisticated area of medical and scientific knowledge. [We are] not prepared to resolve such questions in the absence of such expert knowledge.

*Treadaway*, 116 Ariz. at 167, 568 P.2d at 1065. Thus, in the absence of the qualifying expert testimony, evidence of prior sexual misconduct is irrelevant as a matter of law. Such evidence is, of course, highly prejudicial. Under the narrow circumstances of this case, the introduction of the evidence deprived Petitioner of due process of law.

█ We readily acknowledge that the rules of evidence do not apply in grand jury proceedings. *State ex rel. Berger v. Myers*, 108 Ariz. 248, 250, 495 P.2d 844, 846 (1972); Ariz.R.Evid. 1101(b) (1988). This, however, is not a case of weighing rele-

---

1. One Arizona case, *State ex rel. Collins v. Superior Court*, 161 Ariz. 392, 778 P.2d 1288 (App. 1989), infers that it is undesirable to introduce evidence of prior convictions in a grand jury proceeding. Two cases from other jurisdictions condemn the use of any prior bad act testimony before the grand jury. See *United States v. Hogan*, 712 F.2d 757 (2d Cir.1983), and *People v. Lobianco*, 126 Misc.2d 519, 483 N.Y.S.2d 145 (1984).

vance against prejudicial effect. Given *Treadaway*, there is no relevance to put in the balance. It would be otherwise if the State had produced any expert evidence, either by direct testimony or by hearsay, to establish an emotional propensity on the part of Petitioner to commit the acts the grand jury was investigating.

We do not hold that any or all the safeguards that exist at trial with regard to evidence of prior bad acts should be available in grand jury proceedings. It would be undesirable and unprecedented, for example, for a judge to conduct a hearing to weigh relevance against prejudice before a grand jury could consider evidence. *See Marston's Inc. v. Strand*, 114 Ariz. 260, 265, 560 P.2d 778, 783 (1977). Nor do we hold that all evidence of prior bad acts of any type must be excluded from the grand jury's consideration. That question is not before us. All we hold is that the admission of highly prejudicial evidence *which is irrelevant as a matter of law* denied Petitioner due process of law.

It is ordered reaffirming the acceptance of jurisdiction of this special action, granting relief, and remanding this case to the trial court with directions to grant a new finding of probable cause.

KLEINSCHMIDT, C.J., concurs.

NOYES, Judge, dissenting:

## I.

### A.

The majority creates a *per se* evidentiary rule for grand jury proceedings. Henceforth, the State must comply in the grand jury with the rule of evidence announced in *State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977). The fundamental flaw in the majority's analysis is this: In Arizona, rules of evidence do not apply to grand jury proceedings. *See* Ariz.R.Evid. 1101(d) ("The rules [of evidence] (other than with respect to privileges) do not apply to proceedings before grand juries."); *see also Franzi v. Superior Ct.*, 139 Ariz. 556, 565, 679 P.2d 1043, 1052 (1984) ("[H]earsay evidence in a grand jury proceeding is not objectionable."); *State ex rel. Berger v. Myers*, 108 Ariz. 248, 250, 495 P.2d 844, 846 (1972) ("In pursuing its investigations, the grand jury is not bound to act on the customary rules of evidence.").

Arizona joins the federal courts and eighteen other state courts in expressly declining to apply rules of evidence to the grand jury. *See* Sara S. Beale & William C. Bryson, *Grand Jury Law and Practice* § 6:07 n. 14 (1986). These courts do not inquire into the sufficiency or admissibility of evidence presented to the grand jury. *Id.; see, e.g., State v. Cousino*, 18 Ariz.App. 158, 160, 500 P.2d 1146, 1148 (1972) (citing *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), for the proposition that a grand jury may consider hearsay testimony); *Myers*, 108 Ariz. at 250, 495 P.2d at 846 (citing *Application of United States*, 427 F.2d 1140, 1142 (5th Cir.1970), for the proposition that a grand jury may consider illegally-obtained wiretap evidence); *see also* Annotation, *Grand Jury: Admission of Hearsay Evidence Incompetent at Trial as Affecting, in Absence of Statutory Regulation, Validity of Indictment or Conviction*, 37 A.L.R.3d 612, 616 § 3(a) (1971) (citing numerous cases upholding the validity of an indictment based on hearsay evidence alone).

### B.

Arizona courts cannot consider "an attack on an indictment based on the nature, weight or sufficiency of the evidence presented to the grand jury." *Crimmins v. Superior Ct.*, 137 Ariz. 39, 42–43, 668 P.2d 882, 885–86 (1983) (citation omitted); *see Cousino*, 18 Ariz.App. at 159–60, 500 P.2d at 1147–48. This clear authority notwithstanding, the majority has granted an attack on an indictment because it finds that certain evidence presented to the grand jury is "irrelevant as a matter of law." Majority op. at 522, 523, 862 P.2d at 895, 896.

While conceding that there is no Arizona authority directly on point, the majority suggests that three cases support its holding: *State ex rel. Collins v. Superior Ct.*,

161 Ariz. 392, 778 P.2d 1288 (App.1989), *People v. Lobianco,* 126 Misc.2d 519, 483 N.Y.S.2d 145 (Sup.Ct.1984), and *United States v. Hogan,* 712 F.2d 757 (2d Cir.1983). *See* Majority op. at 522, 862 P.2d at 895. These cases do not support the majority. *Collins* refused to apply to the grand jury a rule requiring a bifurcated trial when certain evidence was presented; this case supports the proposition that evidentiary rules do not apply to grand jury proceedings. *See* 161 Ariz. at 394, 778 P.2d at 1290. *Lobianco* is from New York, a jurisdiction that, unlike Arizona, does apply the rules of evidence to grand jury proceedings. *See* Beale & Bryson, *supra,* § 6:07 n. 4 and accompanying text. *Hogan* penalized the government for numerous instances of serious prosecutorial misconduct; misconduct is not an issue in this case.

### C.

The majority recognizes that its holding must be based on due process, not on a rule of evidence. Due process in grand jury proceedings was succinctly discussed by the United States Supreme Court in *Costello:* "An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." 350 U.S. at 363, 76 S.Ct. at 409 (footnote omitted).

The *Costello* articulation has been adopted in Arizona. "[W]hen a duly constituted grand jury returns an indictment valid on its face, no independent inquiry may be made to determine the kind of evidence considered by the grand jury in making its decision." *State v. Jacobson,* 22 Ariz.App. 128, 129, 524 P.2d 962, 963 (1974); *accord State ex rel. Preimsberg v. Rosenblatt,* 112 Ariz. 461, 462, 543 P.2d 773, 774 (1975); *State v. Guerrero,* 119 Ariz. 273, 276, 580 P.2d 734, 737 (App.1978); *State v. Superior Ct.,* 118 Ariz. 457, 459, 577 P.2d 743, 745 (App.1978).

Due process requires that the State make a fair and impartial presentation of evidence to the grand jury. *See Franzi,* 139 Ariz. at 565, 679 P.2d at 1052; *State v.*

*Superior Ct.,* 139 Ariz. 422, 425, 678 P.2d 1386, 1389 (1984); *Crimmins,* 137 Ariz. at 41, 668 P.2d at 884; *State v. Emery,* 131 Ariz. 493, 506, 642 P.2d 838, 851 (1982). Determinations of fairness and impartiality are resolved on a case-by-case basis. *See Crimmins,* 137 Ariz. at 44, 668 P.2d at 887 (Feldman, J., specially concurring) ("[W]hat is required to make a 'fair presentation' to the grand jury ... will vary from case to case.") The trial court makes the initial determination regarding the State's compliance with due process standards in the grand jury. This court cannot disturb the trial court's ruling unless an abuse of discretion is shown. *See State v. Hocker,* 113 Ariz. 450, 454–55, 556 P.2d 784, 788–89 (1976); *State v. Matlock,* 109 Ariz. 193, 195, 507 P.2d 118, 120 (1973).

The trial court in this case recognized that introduction of *irrelevant* bad acts evidence *could* render grand jury proceedings less than fair and impartial. *See also Guerrero,* 119 Ariz. at 276, 580 P.2d at 737 (prosecutor cannot improperly attempt to influence the actions of the grand jury). The trial court found that the prior bad acts presented to the grand jury in this case were "not ones which are generally inadmissible" at trial and that, therefore, they were "relevant bad acts." I find this ruling to be within the bounds of trial court discretion.

The Flagstaff allegations were that Petitioner had a long-term molestation relationship with a girl, beginning in her fifth-grade year, whose trust and confidence he had gained as her music teacher. The Mesa prior bad acts were similar: allegations that Petitioner had a long-term molestation relationship with a girl, beginning in her eighth-grade year, whose trust and confidence he had gained as her band teacher. Although the Mesa evidence might be inadmissible at trial if for no other reason than remoteness in time, an argument for admissibility can be made with reference to *State v. Weatherbee,* 158 Ariz. 303, 762 P.2d 590 (App.1988), in which sexual misconduct from twenty years prior was held admissible under the emotional propensity exception. At trial, of course, the State will

have to comply with the *Treadaway* rule or persuade the trial court of some other theory of admissibility.

At the grand jury stage of the proceedings, one can only speculate about the evidence to be offered at trial and how it is to be offered. Admissibility of evidence at trial depends greatly on context, and that context is developed by adversaries in compliance with evidentiary rules and trial court rulings. Before ruling on the admissibility of evidence at trial, the trial court will know the context in which the issue is to be decided; at the grand jury stage of proceedings, that context does not yet exist, and there is no need to speculate about it. As aptly stated by the trial court, "Post-indictment safeguards exist to revisit the admissibility of such evidence before a petit jury."

### D.

The majority does not outlaw presentation of "emotional propensity" evidence to the grand jury, nor does it require that a medical expert witness testify in the grand jury. *See* Majority op. at 523, 862 P.2d at 896. The majority would find due process compliance in this case if a police officer testified in the grand jury that Dr. X, a reliable medical expert, said that the Mesa crimes tend to show a continuing emotional propensity by defendant to commit the crimes under investigation in Flagstaff. *See id.* ("[The ruling] would be otherwise if the State had produced any expert evidence, either by direct testimony or by hearsay, to establish an emotional propensity...."); *see also Treadaway,* 116 Ariz. at 167, 568 P.2d at 1065. What this hearsay might mean to the grand jury is anybody's guess, but the majority requires that somebody say it.

The mischief in the majority's new rule is not that it adds a short litany to certain grand jury presentations, although it is unfortunate that it does that. The mischief in the new rule is that it will generate pretrial motions, hearings, and special actions regarding the applicability of the *Treadaway* rule to particular grand jury presentations and the extension of the new rule to other situations. The new rule will generate the mini-trials and preliminary showings that have no place at the grand jury stage of the proceedings. *See State v. Baumann,* 125 Ariz. 404, 408–09, 610 P.2d 38, 42–43 (1980); *Marston's, Inc. v. Superior Court,* 114 Ariz. 260, 265, 560 P.2d 778, 783 (1977).

### II.

The courts should not invite litigation about the nature of evidence presented to the grand jury. To the extent that the majority's holding is such an invitation, it is an unwarranted interference with the functioning of the grand jury.

I would accept jurisdiction and deny relief, holding that *Costello, Crimmins,* and Rule 12.9, Ariz.R.Crim.P., articulate the proper standard by which to measure due process in the grand jury and holding, in addition, that the trial court did not abuse its discretion in ruling that Petitioner's due process rights were not violated in this grand jury proceeding.